UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

RUSTY S. WARWICK,                    )
                                     )    No. CV-11-0140-FVS
            Plaintiff,               )
                                     )    ORDER GRANTING DEFENDANT'S
                                     )    MOTION FOR SUMMARY JUDGMENT
        v.                           )
                                     )
                                     )
MICHAEL J. ASTRUE, Commissioner      )
of Social Security,                  )
                                     )
            Defendant.               )
                                     )
_____)

**BEFORE THE COURT** are cross-motions for summary judgment noted for hearing without oral argument.  (ECF No. 16, 19).  Attorney Maureen J. Rosette represents plaintiff; Special Assistant United States Attorney Stephanie Lynn F. Kiley represents the Commissioner of Social Security (defendant).  After reviewing the administrative record and the briefs filed by the parties, the Court **grants** defendant's Motion for Summary Judgment.

### JURISDICTION

Plaintiff filed applications for a period of disability, disability insurance benefits (DIB), and supplemental security income (SSI) on November 27, 2007, alleging disability as of November 1, 2005, due to "fibromyalgia, sleep apnea, hand and neck" (Tr. 104).  The applications were denied initially and on reconsideration.

Administrative Law Judge (ALJ) Robert S. Chester held a hearing on October 6, 2009 (Tr. 8-33).  The ALJ issued an unfavorable decision on December 1, 2009 (Tr. 497-510).  The

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

Appeals Council denied review on February 25, 2011 (Tr. 1-4).  The ALJ's December 2009 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on April 12, 2011.  (ECF Nos. 1 & 4).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on July 7, 1960 and was 45 years old at the time of the alleged onset date.  At the administrative hearing, Plaintiff testified he was single, had no children, and lived in his sister's house along with his parents (Tr. 16).  His sole source of income at the time was public assistance (Tr. 16). Plaintiff attended one year of vocational college and reported he last worked as a working foreman in field construction (Tr. 16-17).  Plaintiff alleges he stopped working in November of 2005 because of back/neck pain and headaches (Tr. 18).

Prior to his July 2006 neck fusion surgery, Plaintiff described his symptoms as "[s]tiff, popping neck, headaches that just were completely debilitating" (Tr. 19-20).  Plaintiff also testified he has problems with his knees (Tr. 20).  He wears braces for his knees which he testified "definitely help . . . the pain" (Tr. 20).  Plaintiff stated he had successful surgery on his right shoulder in 2003 or 2004 and, following that surgery, "was able to pretty much do any work" (Tr. 21, 23).  He indicated, however, that his left shoulder was now starting to bother him as well (Tr. 21).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

1    Plaintiff indicated he is depressed because he has lost

2  everything he has ever worked for, he is not able to work and

3  support himself, he is no longer able to hunt, fish, golf or go

4  snowmobiling, and his life has come down to living in the basement

5  of his sister's house and watching TV (Tr. 24).  Plaintiff stated

6  he has difficulty sleeping, getting only about 3 hours of sleep a

7  night on a good night (Tr. 24-25).  Plaintiff testified that on

8  good days he is able to sit for 1 ½ to two hours, but, on not so

9  good days, he is only able to sit for 45 minutes to an hour (Tr.

10  22).  He stated he could stand for about 45 minutes to an hour

11  before needing a break, walk about 1/3 of a mile at one stretch,

12  and lift a gallon a milk (Tr. 22-23).  He indicated he could not

13  work a full eight-hour workday and would be able to work only two

14  or three days in a seven-day week (Tr. 26-27).

15                    **SEQUENTIAL EVALUATION PROCESS**

16    The Social Security Act (the Act) defines disability as the

17  "inability to engage in any substantial gainful activity by reason

18  of any medically determinable physical or mental impairment which

19  can be expected to result in death or which has lasted or can be

20  expected to last for a continuous period of not less than twelve

21  months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also

22  provides that a plaintiff shall be determined to be under a

23  disability only if any impairments are of such severity that a

24  plaintiff is not only unable to do previous work but cannot,

25  considering plaintiff's age, education and work experiences,

26  engage in any other substantial gainful work which exists in the

27  national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

28  Thus, the definition of disability consists of both medical and

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

1  vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156

2  (9th Cir. 2001).

3       The Commissioner has established a five-step sequential

4  evaluation process for determining whether a person is disabled.

5  20 C.F.R. §§ 404.1520, 416.920.  Step one determines if the person

6  is engaged in substantial gainful activities.  If so, benefits are

7  denied.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  If

8  not, the decision maker proceeds to step two, which determines

9  whether plaintiff has a medically severe impairment or combination

10 of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii),

11 416.920(a)(4)(ii).

12      If plaintiff does not have a severe impairment or combination

13 of impairments, the disability claim is denied.  If the impairment

14 is severe, the evaluation proceeds to the third step, which

15 compares plaintiff's impairment with a number of listed

16 impairments acknowledged by the Commissioner to be so severe as to

17 preclude substantial gainful activity.  20 C.F.R. §§

18 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P

19 App. 1.  If the impairment meets or equals one of the listed

20 impairments, plaintiff is conclusively presumed to be disabled.

21 If the impairment is not one conclusively presumed to be

22 disabling, the evaluation proceeds to the fourth step, which

23 determines whether the impairment prevents plaintiff from

24 performing work which was performed in the past.  If a plaintiff

25 is able to perform previous work, that plaintiff is deemed not

26 disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At

27 this step, plaintiff's residual functional capacity (RFC) is

28 considered.  If plaintiff cannot perform past relevant work, the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

1  fifth and final step in the process determines whether plaintiff
2  is able to perform other work in the national economy in view of
3  plaintiff's residual functional capacity, age, education and past
4  work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v);
5  *Bowen v. Yuckert*, 482 U.S. 137 (1987).

6      The initial burden of proof rests upon plaintiff to establish
7  a *prima facie* case of entitlement to disability benefits.
8  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.*
9  *Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is
10  met once plaintiff establishes that a physical or mental
11  impairment prevents the performance of previous work.  The burden
12  then shifts, at step five, to the Commissioner to show that (1)
13  plaintiff can perform other substantial gainful activity and (2) a
14  "significant number of jobs exist in the national economy" which
15  plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th
16  Cir. 1984).

17                    **STANDARD OF REVIEW**

18      Congress has provided a limited scope of judicial review of a
19  Commissioner's decision.  42 U.S.C. § 405(g).  A Court must uphold
20  the Commissioner's decision, made through an ALJ, when the
21  determination is not based on legal error and is supported by
22  substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995
23  (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.
24  1999).  "The [Commissioner's] determination that a plaintiff is
25  not disabled will be upheld if the findings of fact are supported
26  by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572
27  (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence
28  is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d

1112, 1119 n. 10 (9ᵗʰ Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9ᵗʰ Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9ᵗʰ Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9ᵗʰ Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9ᵗʰ Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9ᵗʰ Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9ᵗʰ Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9ᵗʰ Cir. 1987).

///

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

**ALJ'S FINDINGS**

The ALJ determined that plaintiff meets the insured status requirements of the Act through December 31, 2010 (Tr. 499).  At step one, the ALJ found plaintiff has not engaged in substantial gainful activity since November 1, 2005, the alleged onset date (Tr. 499).  At step two, the ALJ found plaintiff had severe impairments of "status post fusion of the cervical spine, status post repair of the right shoulder, status post left carpal tunnel release, fibromyalgia, obesity, adjustment disorder with mixed anxiety and depression, personality disorder, not otherwise specified, and pain disorder with psychological factors and general medical condition" (Tr. 499).  The ALJ evaluated the medical evidence of record (Tr. 499-505) and concluded, at step three, that plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Tr. 505).  The ALJ then assessed plaintiff's RFC and determined plaintiff could perform light work; could occasionally climb ramps or stairs but should never climb ladders, ropes and scaffolds; could occasionally engage in stooping, kneeling, crouching, crawling, or overhead reaching with the bilateral upper extremities; should avoid concentrated exposure to vibration and hazards such as unprotected heights or moving machinery; is capable of simple and some detailed tasks; is able to follow one and two step instructions, but sustained concentration would be episodically disrupted by his perception of pain; would do best in jobs with only occasional contact with the general public; and is capable of superficial contact with supervisors and coworkers (Tr. 506).

With respect to plaintiff's credibility, the ALJ stated that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment (Tr. 507).  At step four, the ALJ found that plaintiff is not capable of performing his past relevant work as a construction worker I, millwright, and combination welder (Tr. 508-509).  However, at step five, the ALJ determined that based on the vocational expert testimony and plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff could perform, including the jobs of production assembler, cleaner I, and mail clerk (Tr. 509-510).  Accordingly, the ALJ concluded that plaintiff was not disabled as defined by the Act from November 1, 2005, through the date of his decision, December 1, 2009 (Tr. 510).

**ISSUES**

Plaintiff alleges the ALJ erred as follows:

1. The ALJ erroneously determined that plaintiff's impairments did not meet or medically equal the listings at 1.04A;

2. The ALJ erred by failing to accord weight to the opinions of Carol Miller, ARNP, regarding plaintiff's physical condition;

3. The ALJ erred by failing to accord weight to the opinion of W. Scott Mabee, Ph.D., regarding plaintiff's mental limitations; and

4. The ALJ erred by failing to provide specific, clear and convincing reasons for finding plaintiff's testimony not fully credible

(ECF No. 17 at 9-15).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

**DISCUSSION**

**A.  Plaintiff's Credibility**

Plaintiff asserts that the ALJ erred by failing to properly consider plaintiff's testimony regarding his limitations.  (ECF No. 17 at 13-15).  Plaintiff specifically argues that the ALJ failed to state the required specific, clear and convincing reasons to reject plaintiff's hearing testimony.

It is the province of the ALJ to make credibility determinations.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

As noted above, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment (Tr. 507).  The ALJ determined plaintiff retained

the RFC to perform light exertion level work; could occasionally climb ramps or stairs but should never climb ladders, ropes and scaffolds; could occasionally engage in stooping, kneeling, crouching, crawling, or overhead reaching with the bilateral upper extremities; should avoid concentrated exposure to vibration and hazards such as unprotected heights or moving machinery; is capable of simple and some detailed tasks; is able to follow one and two step instructions, but sustained concentration would be episodically disrupted by his perception of pain; would do best in jobs with only occasional contact with the general public; and is capable of superficial contact with supervisors and coworkers (Tr. 506).

With regard to plaintiff's specific complaint that the ALJ's RFC determination did not account for plaintiff's testimony that "since his surgery" he continued to have a stiff neck with popping, headaches, and tremendous pain (ECF No. 17 at 13), plaintiff actually testified that "in 2005", before his neck surgery, his symptoms were "[s]tiff, popping neck, headaches that just were completely debilitating" (Tr. 19-20). Plaintiff did not undergo neck fusion surgery until July 2006 (Tr. 199-201). Medical records from the surgeon, Cynthia Hahn, M.D., indicate that post neck fusion surgery, plaintiff's neck felt good, his neck was not really bothering him and the headaches which he had prior to the surgery had gone away (Tr. 186-188). In March 2009, Carol Miller, ARNP, noted that his neck surgery "nicely resolved" (Tr. 450).

Plaintiff testified at the administrative hearing that his impairments prevented him from working a full eight-hour workday

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

and from working a full workweek (Tr. 26-27).  He stated that on good days he is able to sit for only 1 ½ to two hours, but, on not so good days, he could only sit for 45 minutes to one hour (Tr. 22).  He indicated he could stand for only about 45 minutes to an hour before needing a break, walk about 1/3 of a mile at one stretch, and lift a gallon a milk (Tr. 22-23).  The ALJ noted that this level of limitation is not supported by the evidence of record (Tr. 507).  The undersigned agrees.

As indicated by the ALJ, treatment records reflect that plaintiff's condition is generally stable except when he over does it, such as when he is attempting to do some construction-type jobs for his father as an apartment manager or shoveling snow (Tr. 507, 440, 433, 426, 424-425, 334).  In fact, Ms. Miller opined in December 2006 that plaintiff could work at a job where the physical demands are less than his prior job requirements (Tr. 306), advised plaintiff in September 2008 to obtain some type of work (Tr. 430), and encouraged plaintiff in October 2008 to remain as active as possible (Tr. 433).  The ALJ further notes that x-rays of plaintiff's neck and knee have displayed only minimal findings (Tr. 508).  The medical evidence of record does not reflect the level of limitation plaintiff reported at the administrative hearing.

Plaintiff's daily activities are also inconsistent with his allegations of disabling limitations. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (it is well-established that the nature of daily activities may be considered when evaluating credibility).  Plaintiff was noted to have been "up on ladder cleaning out gutters" (Tr. 434), lifting a garage door (Tr. 429),

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

assisting with a move (Tr. 426), shoveling snow (Tr. 332, 440), and helping his father as an apartment manager.  The ALJ notes evidence that plaintiff took his mother to appointments, helped care for cats, could cook simple meals, could do his own laundry, drove a car, shopped, paid his own bills, and spent time watching television (Tr. 508).  The ALJ also indicated the record shows that plaintiff reported walking the dog, working on increasing his exercise, and trying to walk 1/2 to 1 mile a day (Tr. 446, 452, 456, 504).  On June 11, 2009, plaintiff reported to Ms. Miller that he was exercising daily by walking the dog about 1/3 mile, no matter how he felt (Tr. 459, 504).  This level of activity is not consistent with plaintiff's testimony regarding his limitations.

It also appears that plaintiff has been noncompliant with physical therapy demands.  Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints.  20 C.F.R. §§ 404.1530, 426.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  A June 15, 2009 report from Apex Physical Therapy reveals that plaintiff was being discharged from active services "primarily due to his propensity toward no shows . . . in addition to the fact that he has improved with [activities of daily living]" (Tr. 487-488).

After reviewing the record, the undersigned finds that the reasons provided by the ALJ for discounting plaintiff's subjective complaints are clear, convincing, and fully supported by the record.  Accordingly, the ALJ did not err by concluding that plaintiff's subjective complaints regarding the extent of his functional limitations were not fully credible in this case.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

**B.  Physical Limitations**

Plaintiff contends that the ALJ erred by finding he has the RFC to perform a range of light exertion level work activity. (ECF No. 17 at 10-11).  Plaintiff indicates that the opinions of Ms. Miller reflect that he has greater restrictions from a physical standpoint than those assessed by the ALJ.  He argues that the ALJ failed to set forth the requisite specific and legitimate reasons supported by substantial evidence in the record for rejecting Ms. Miller's opinions.

Ms. Miller filled out a physical evaluation form on December 28, 2006 (Tr. 300-303).  Ms. Miller noted that plaintiff's impairments were moderate and opined that plaintiff would be restricted to sedentary exertion level work (Tr. 301).  However, Ms. Miller indicated that she expected plaintiff's overall limitations on work activities to continue for less than 90 days[1] (Tr. 303).  Moreover, Ms. Miller has never opined that plaintiff is not able to work.  In fact, as noted above, Ms. Miller opined in December 2006 that plaintiff could work at a job where the physical demands are less than his prior job requirements (Tr. 306), advised plaintiff in September 2008 to obtain some type of work (Tr. 430), and encouraged plaintiff in October 2008 to remain as active as possible (Tr. 433).

As noted by defendant, Ms. Miller is also not an acceptable medical source.  (ECF No. 20 at 12).  Only licensed physicians and certain other qualified specialists are considered "acceptable

---

[1]The limitations assessed by Ms. Miller would thus not meet the duration requirements of the Act (one year).  42 U.S.C. § 1382c(a)(3)(A).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

medical sources" under the Social Security regulations.  *See* 20 C.F.R. §§ 404.1513, 416.913.  Nurses are defined as "other sources" and are not entitled to the same deference.  On April 29, 2008, state agency reviewing physician, Norman Staley, M.D., an acceptable medical source, affirmed a February 7, 2008 RFC assessment which limited plaintiff to a restricted range of light exertion level work (Tr. 376-383, 411).  The record does not support a more restrictive finding than Plaintiff being restricted to a range of light exertion level work.

Based on the foregoing, it was appropriate for the ALJ to reject Ms. Miller's opinion that plaintiff's physical abilities limited him to sedentary exertion level work.  The undersigned finds that the ALJ's physical RFC determination is in accord with the weight of the record evidence and free of legal error.

**C.  Listing 1.04A**

Plaintiff contends that the ALJ erred at step three of the sequential evaluation process.  (ECF No. 17 at 9-10).  Plaintiff specifically asserts that his spinal disorder meets the criteria of section 1.04A of the Listing of Impairments.

The claimant bears the burden of establishing that his impairments satisfy the requirements of a Listings impairment. *Tackett v. Apfel*, 180 F.3d 1094, 1098-1099 (9th Cir. 1999); *see,* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).  To satisfy this burden, plaintiff must prove that his impairments "meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.' *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

At step three, the ALJ considered Listing 1.00 and concluded that plaintiff's impairments did not medically meet or equal the criteria for this Listing (Tr. 505). The ALJ stated that plaintiff does not show the findings on examination required for disability to be predicated upon medical considerations alone (Tr. 505). The undersigned agrees.

Listing 1.04 deals with disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root or the spinal cord. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. Listing 1.04A requires an impairment that results in: "Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

As noted by defendant (ECF No. 20 at 8-9), the record does not demonstrate that plaintiff's spinal impairment caused nerve root compression (Tr. 203 (September 2006 cervical spine file showed stable fusion, disc and body heights unchanged)); (Tr. 206 (March 2006 cervical spine MRI revealed plaintiff's spinal cord was not affected at C4-5 or C6-7 and that plaintiff's mild posterial disc bulge slightly flattening the right surface of the cord, but was not found to cause compression)); (Tr. 204 (April 2006 cervical spine x-rays showed moderate degenerative disc disease slight end plate spurring, which narrowed the neural

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

foramina, but no other stenosis was seen)); (Tr. 364-365
(neurosurgeon Dr. Hahn opined in June 2006 that plaintiff did not
have spinal cord compression)).  In September 2008, after
plaintiff was hit in the head by a garage door, x-rays of the
cervical spine did not show acute changes and fusion was intact
(Tr. 431).

     Plaintiff has also not demonstrated, nor does the record
reflect, that plaintiff's spinal impairment caused neuro-anatomic
distribution of pain.  Dr. Hahn attributed plaintiff's hand
numbness more to his carpal tunnel syndrome than his cervical
spine issues (Tr. 364-365).

     While there is evidence that plaintiff experienced limitation
of motion of the spine, the record does not reflect that the
limitation was signficant after his July 2006 spinal fusion (Tr.
453 (April 2009 normal cervical mobility)); (Tr. 450 (March 2009
mildly reduced cervical range of motion)); (Tr. 429 (September
2008 range of motion intact)); (Tr. 406 (February 2008 neck
described as supple with full range of motion and no pain)); (Tr.
265-266 (October 2007 mildly reduced range of motion in his
cervical spine)).

     Lastly, Plaintiff has not demonstrated, and the record does
not reflect, motor loss accompanied by sensory or reflex loss.

     Based on the foregoing, the undersigned finds that plaintiff
has not met his burden at step three with respect to Listing
1.04A.  The ALJ's step three determination is supported by
substantial evidence and free of legal error.

///

///

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

**D.  Psychological Limitations**

Plaintiff asserts that limitations assessed by W. Scott Mabee, Ph.D., reflect greater restrictions from a psychological standpoint than assessed by the ALJ, and the ALJ erred by not according Dr. Mabee's reports greater weight.  (ECF No. 17 at 11-13).  Plaintiff argues that the ALJ failed to set forth specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Mabee's opinions.  (ECF No. 17 at 13).

The ALJ determined that plaintiff was able to follow one and two step instructions and perform simple and some detailed tasks, but that sustained concentration would be episodically disrupted by plaintiff's perception of pain, he would do best in jobs with only occasional contact with the general public and only superficial contact with supervisors and coworkers (Tr. 506). Contrary to plaintiff's argument, this mental RFC determination does not deviate to a great extent from the findings of Dr. Mabee.

On January 17, 2007, Dr. Mabee completed a psychological evaluation of plaintiff (Tr. 290-298).  Dr. Mabee diagnosed personality disorder associated with both psychological factors and a general medical condition; adjustment disorder with mixed anxiety and depressed mood, chronic; and personality disorder with dependant features (Tr. 296).  He also gave plaintiff a current GAF score of 60[2] (Tr. 297).  With regard to barriers to employment, Dr. Mabee indicated plaintiff may have a mild amount of social difficulties, should be able to understand and follow

---

[2]A GAF of 60-51 reflects: Moderate symptoms or moderate difficulty in social, occupational, or school functioning.  *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

simple as well as complex verbal and written instructions, and does not appear to have difficulty focusing and sustaining concentration and memory (Tr. 297). Dr. Mabee opined that plaintiff's pace and persistence would be average, but his ability to focus and complete tasks would likely be negatively impacted if he is experiencing pain (Tr. 297). Dr. Mabee also believed plaintiff's ability to reason and use appropriate judgment appeared average, but he may have some moderately serious difficulties navigating in a typical work environment (Tr. 297). Dr. Mabee checked boxes on a form[3] indicating plaintiff had marked limitations in his ability to perform routine tasks and to respond appropriately to and tolerate the pressures and expectations of a normal work setting and severe limitations in his ability to control physical or motor movements and maintain appropriate behavior (Tr. 292).

On November 13, 2007, Dr. Mabee completed a second evaluation of plaintiff (Tr. 255-264). Other than opining that plaintiff's abilities to exercise judgment and make decisions and to respond appropriately to and tolerate the pressures and expectations of a normal work setting were markedly impaired, all previously assessed functional limitations were determined to be no greater than moderately impaired (Tr. 257). Plaintiff's current GAF score was increased to 60 to 65[4] (Tr. 261). Dr. Mabee reported that he

---

[3]A check-box form is entitled to little weight. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996).

[4]A GAF of 70-61 is characterized as: "Some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 12 (3d ed. Rev. 1987).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18

believed plaintiff would not have a difficult time understanding and following simple verbal and written instructions, but may have more difficulty with complex directions (Tr. 262).  It was further assessed that plaintiff's pace and persistence would be average when given a simple task and his ability to reason and use appropriate judgment appeared fair, but he would still have a difficult time functioning in a typical work environment (Tr. 262).

Since Dr. Mabee's narrative report and assessed GAF scores account for only mild and moderate limitations, Dr. Mabee's account on check-box forms of marked and severe functional limitations is internally inconsistent.  Moreover, the record evidence of plaintiff's reported activities of daily living also contradict the assessment of marked and severe functional limitations.  *See supra*.  Other than the notations of marked and severe limitations, the restrictions discussed by Dr. Mabee do not differ to a great extent from those determined by the ALJ.

The findings of state agency physician, James Bailey, Ph.D., who reviewed the record, including the two evaluations completed by Dr. Mabee, mirrors the ALJ's mental RFC determination (Tr. 384-400).  Dr. Bailey determined plaintiff had mild limitations in activities of daily living and in maintaining concentration, persistence and pace, a moderate limitation in maintaining social functioning, and no episodes of decompensation (Tr. 394).  Dr. Bailey opined plaintiff was moderately limited in his abilities to maintain attention and concentration for extended periods, to work in coordination with or proximity to others without being distracted by them, to interact appropriately with the general

public and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 398-399). Dr. Mabee's opinion is not inconsistent with the findings of Dr. Bailey, other than the marked and severe functional limitations noted on the check-box forms.

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097. If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague*, 812 F.2d at 1229-1230.

Substantial evidence supports the ALJ's mental RFC determination in this case. Consequently, the Court must not second guess the Commissioner's finding in this regard. It was not error for the ALJ to reject Dr. Mabee's assessment of marked and severe mental limitations.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, the Court finds that the ALJ's decision is free of legal error and supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment (**ECF No. 19**) is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment (**ECF No. 16**) is **DENIED.**

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 20

1  **IT IS SO ORDERED.**  The District Court Executive is directed

2 to file this Order, provide copies to the parties, enter judgment

3 in favor of Defendant, and **CLOSE** this file.

4  **DATED** this  17th  day of October, 2012.

5

6                    S/Fred Van Sickle
                    Fred Van Sickle
7          Senior United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 21